894 A.2d 1176

# IN THE MATTER OF THE FORFEITURE OF PUBLIC OFFICE OF FRANCOIS D. NUNEZ, A/K/A FRANCISCO NUNEZ.

Superior Court of New Jersey
Appellate Division

Argued March 7, 2006—Decided April 4, 2006.

346

Before Judges SKILLMAN, PAYNE and SABATINO.

*Martin R. Pachman,* argued the cause for appellant, City of Union City.

*Ty Hyderally,* argued the cause for respondent Francisco Nunez.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal involves a public employer's attempt to enforce a forfeiture of the employment of one of its employees based on his conviction of a crime after the conviction was expunged. We conclude that the expungement precludes forfeiture of the employee's position based on the conviction.

On June 28, 1991, respondent Francois Nunez pled guilty pursuant to a plea bargain to unlawful possession of a weapon, in violation of *N.J.S.A.* 2C:39–5(b), which is a third-degree offense. At the time of his plea, Nunez was employed by appellant City of

Union City as a bilingual clerk. Under *N.J.S.A.* 2C:51–2(a)(1), any conviction of an offense "of the third degree or above" automatically requires the forfeiture of "any public office, position or employment" then held by the defendant. *See State v. Ercolano*, 335 *N.J.Super.* 236, 242–48, 762 *A*.2d 259 (App.Div.2000), *certif. denied*, 167 *N.J.* 635, 772 *A*.2d 937 (2001).

On October 4, 1991, the trial court sentenced Nunez to a two-year term of probation. However, the court failed to impose the forfeiture of public employment mandated by *N.J.S.A.* 2C:51–2(a)(1). Neither the prosecutor nor Union City brought this failure to the court's attention.[1]

Moreover, a member of Union City's governing body sent a letter to Nunez indicating that the City intended to continue his employment:

> Please be advised that the Honorable Judge Elaine L. Davis, J.S.C. on October 7, 1991 ordered that you remain gainfully employed by the City of Union City, NJ.[2] Please be advised that my fellow Commissioners and I have decided to maintain you in your full time position with the City of Union City, NJ.
>
> Trusting this communication will serve as a record for your files.

Nunez has continued to be employed by Union City as a clerk until the present day.

On October 17, 2002, Nunez filed a petition for expungement of his 1991 conviction. Nunez served copies of the petition upon the Union City Chief of Police and the Union City Municipal Court.

---

[1] At the time of defendant's conviction, a public employer did not have authority to petition the trial court to enforce a mandatory forfeiture of public employment. In 1995, the Legislature conferred such authority by an amendment that added *N.J.S.A.* 2C:51–2(g) to the forfeiture statute. *L.* 1995, *c.* 250, § 1; *see Ercolano, supra*, 335 *N.J.Super.* at 243–48, 762 *A*.2d 259. Although Union City did not have statutory authority to petition the court for the forfeiture of Nunez's employment at the time of his conviction, it still could have brought the failure to impose that forfeiture to the court's attention.

[2] The judgment of conviction stated that one of the conditions of Nunez's probation was that he "remain gainfully employed." The judgment did not specify that Nunez's employment would be with Union City, and it is unclear from the record before us whether the trial court was aware that Nunez's employer was Union City.

Union City did not submit any opposition to the petition. On March 13, 2003, the court granted Nunez's petition and entered an order expunging his conviction.

In 2001 and again in 2004, Nunez filed "political affiliation discrimination" claims against the current Mayor of Union City. On March 7, 2005, Nunez was appointed Acting Vice President of the Union City Employees Association. As a result of Nunez's claims against the Mayor and his union activities, an antagonistic relationship developed between Nunez and Union City's governing body.

On March 18, 2005, Union City filed a motion in the Law Division for the forfeiture of Nunez's employment with the City based on his 1991 conviction. The trial court concluded in a letter opinion that Union City was equitably estopped from seeking forfeiture of Nunez's employment. In reaching this conclusion, the court relied upon the previously quoted letter from a member of Union City's governing body indicating that Nunez's employment would be continued notwithstanding his criminal conviction, as well as the passage of fourteen years since the conviction during which time Nunez has remained a Union City employee. The court noted that Nunez's conviction had been expunged, but did not rest its decision upon the expungement.

On appeal, Union City argues that the 1991 letter from the governing body authorizing Nunez to continue his employment with the City was "ultra vires in the primary sense and void," *Skulski v. Nolan,* 68 *N.J.* 179, 198, 343 *A.2d* 721 (1975) (quoting *Summer Cottagers' Ass'n of Cape May v. City of Cape May,* 19 *N.J.* 493, 504, 117 *A.2d* 585 (1955)), because forfeiture was mandatory under *N.J.S.A.* 2C:51–2(a), and therefore the letter does not provide a basis for estopping the City from enforcing the forfeiture. We find it unnecessary to decide whether the doctrine of equitable estoppel could be applied in the circumstances of this case because we conclude that the expungement of Nunez's conviction relieved him of the forfeiture of public employment mandated by *N.J.S.A.* 2C:51–2(a)(1).

*N.J.S.A.* 2C:52–2(a) provides that a person convicted of a crime, other than a crime listed in *N.J.S.A.* 2C:52–2(b) and (c),[3] "who has not been convicted of any prior or subsequent crime, . . . and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later," petition for expungement of the conviction. *N.J.S.A.* 2C:52–27 provides that "if an order of expungement is granted, the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred[.]"

Our courts have recognized that the purpose of expungement is the "elimination of the collateral consequences [of a criminal conviction] imposed upon [an] otherwise law-abiding citizen[.]" *In re T.P.D.*, 314 *N.J.Super.* 643, 648, 715 *A.*2d 1048 (Law Div.1997), *aff'd o.b.*, 314 *N.J.Super.* 535, 715 *A.*2d 994 (App.Div.1998). Expungement enables an eligible person "to regain many of those civil privileges that are lost attendant to a criminal conviction, [including] the right to serve on a jury, the right to vote, and the right to purchase and possess a firearm." *Ibid.* (citations omitted).

■ Although neither the statutes governing expungement nor those governing the forfeiture of public office or employment specifically address the effect of an expungement of a conviction upon a forfeiture of public office or employment, we conclude that forfeiture of public employment is a "collateral consequence[ ]" of a criminal conviction, *State v. Heitzman*, 107 *N.J.* 603, 604, 527 *A.*2d 439 (1987), which is eliminated by an order of expungement. *N.J.S.A.* 2C:52–27 describes the consequences of expungement in expansive terms, providing that an expunged "conviction and any proceedings related thereto shall be deemed not to have occurred[.]" We believe that a criminal conviction that the Legisla-

---

[3] Those crimes include murder, manslaughter, rape, robbery, arson, perjury and endangering the welfare of a child.

ture has directed "shall be deemed not to have occurred" cannot provide a foundation for a forfeiture of public office or employment under *N.J.S.A.* 2C:51-2(a).

This conclusion is supported by *N.J.S.A.* 2C:51-2(d), which governs future disqualification from public office or employment as a result of a criminal conviction. This section provides:

> In addition to the punishment prescribed for the offense, and the forfeiture set forth in subsection a. of N.J.S. 2C:51-2, any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions.

Thus, the disqualification from holding future public office or employment after a criminal conviction is limited to "an offense involving or touching [the convicted person's] public office, position or employment." [4] Therefore, even without obtaining an expungement of his conviction, Nunez, as a person convicted of an offense that did not involve or touch his employment, was not disqualified from future public employment, including re-employment by Union City. Since Nunez would have been eligible for new public employment at any time since his 1989 conviction, there is no public policy consideration that could justify construing *N.J.S.A.* 2C:52-27 to exclude a forfeiture of public employment from the collateral consequences of Nunez's conviction that were eliminated by expungement.

Affirmed.

---

[4] Notably, *N.J.S.A.* 2C:52-2(b) prohibits expungement of a conviction for "any crime committed by a person holding any public office, position or employment ... if the crime involved or touched such office, position or employment." Consequently, any criminal conviction that disqualifies a person from public employment under *N.J.S.A.* 2C:51-2(d) also cannot be expunged. The prohibition against expungement of such conviction contained in *N.J.S.A.* 2C:52-2(b) assures that public employers will have access to the criminal history information required to enforce the disqualification from public employment provided by *N.J.S.A.* 2C:51-2(d).