**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1237-22

MARILEE NEGRON,

     Plaintiff-Appellant,

v.

JEAN C. BENITEZ,

     Defendant-Respondent.

_____

> Argued October 25, 2023 – Decided December 4, 2023
>
> Before Judges Enright and Paganelli.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FD-06-1555-11.
>
> Marilee Negron, appellant, argued the cause pro se.
>
> Respondent has not filed a brief.

PER CURIAM

     In this one-sided appeal, plaintiff challenges the November 16, 2022 order

denying her motion to stay or reconsider the parties' April 28, 2022 consent

order.  Following our review of the record and the applicable legal principles, we affirm.

We recite the facts and procedural history from the Family Part record. Plaintiff and defendant are the parents of a fifteen-year-old son.  Since 2016, the parties abided by an order that provided plaintiff with primary residential custody of the parties' son, fixed defendant's child support obligation and granted him "a substantial amount of parenting time."

On January 10, 2022, defendant filed an emergent application, seeking to be designated the parent of primary residence.  He alleged:  plaintiff kept hitting their son; her "boyfriend and brother [would] hold their . . .  [son]"; the "boyfriend tried to grab [their son]"; and the son was "tired of the physical and mental abuse" in plaintiff's home, had run away from her home, and no longer wanted to live with plaintiff.  The judge granted the emergent application and awarded defendant "temporary sole custody" of the child until further order of the court.  The parties were referred to the Division of Child Protection and Permanency (DCP&P).

On January 19, 2022, the matter returned to court.  Present for the hearing were:  plaintiff, her attorney, defendant, and a representative from DCP&P.  The DCP&P representative reported to the court that there were "no signs of abuse

or neglect; no history of DCP&P involvement and both parties' homes were safe and appropriate."  The representative also stated the matter in dispute seemed to be a "custody issue."

The parties agreed the child "probably" wanted to reside with defendant. Therefore, despite "no real change of circumstance" and "no abuse or neglect[]" finding by DCP&P, the judge entered an order on January 21, 2022 that provided for the parties to share parenting time on a "50/50" basis.  Further, the order required the child to appear "for an in[-]being interview with [the judge] to take place in . . . chambers" and for the matter to return "for a hearing to discuss the issues of custody and parenting time."

On February 2, 2022, the parties returned to court for another hearing. The parties addressed concerns with "conflicts" in plaintiff's home and "miscommunication" between plaintiff and the child.  Plaintiff acknowledged that the child might not want to spend time with her and there were concerns with their level of communication.  Therefore, she was "agreeable to do therapy with [the child]."

On February 7, 2022, the judge entered an order providing, in pertinent part:  (1) the "parties shall have joint custody of the minor child . . . with [defendant] as the parent of primary residence and [plaintiff] as the parent of

alternate residence"; (2) "the child shall have no unexcused absences from school"; (3) plaintiff "shall have open and liberal parenting time with the minor child and the child shall spend no less than two days per week with [plaintiff] on days to be worked out between [plaintiff] and the child"; (4) "[t]he parties shall allow the child to move between both parties' homes"; and (5) plaintiff shall "set up counseling sessions to include [plaintiff] and the child . . . . The sessions may include [defendant] to the extent that the counselor believes [defendant] should be included."

On March 16, 2022, the judge interviewed the child. The child explained that defendant encouraged him to see plaintiff. However, he was "half/half" about seeing her; had to think about how often he wanted to see her; and did "not really" "want to spend a couple days a week with" her. Nonetheless, the child agreed to "visit" plaintiff and "work [his] way into staying over."

On April 11, 2022, the judge conducted another hearing with the parties. The child had only seen plaintiff "maybe three times" and the two had not engaged in counseling. Plaintiff recognized the living situation "probably was not going to go back to the way it was . . . ," but wanted "something where she could see [the child] on the weekends, or every other weekend . . . ." She also acknowledged the child "could not be forced."

4

The judge executed the parties' consent order, as prepared by plaintiff's attorney, on April 28, 2022, which memorialized the parties' revised custody agreement. The consent order provided:

> (1) [t]he parties shall continue to share joint legal custody of the minor child . . . with the [d]efendant designated as the parent of primary residence and the [p]laintiff designated as the parent of alternate residence; (2) the [p]laintiff shall exercise parenting time every other weekend . . . with additional parenting time being open and liberal as agreed between the parties; . . . (4) [a]ll other provisions of the previous orders shall remain in full force and effect.

Following the entry of the April 28 consent order, plaintiff filed a pro se motion for reconsideration. The judge addressed the motion on July 18, 2022. He characterized her application as an attempt to "revert back to the [2016] order, agreement of custody and parenting time where she was [the parent of] primary [residence] and dad was [the parent of] alternate [residence], with a parenting time schedule . . . ."

Plaintiff argued that the custody arrangements under the April 28 consent order were not in the child's best interest because: (1) defendant posted a picture with the child and a water gun; (2) defendant permitted his seventeen-year-old niece to accompany the child to a doctor's appointment; (3) the child "was late

to school all the time"; (4) defendant posted a picture of marijuana; and (5) defendant posted "derogatory" or "unpleasant" messages about plaintiff.

The judge was not persuaded by these arguments, and noted that plaintiff "entered into a consent order when represented by experienced counsel. And [she] rather promptly filed a motion to seek to modify the consent order that [she] entered into." The judge entered an order on July 18, 2022, denying the motion after finding "plaintiff was represented by very competent counsel"; there was no evidence the [April 28] consent order was entered into "without due consideration of the parties who measured the pros and cons of proceeding to a final hearing"; and "there's been no change of circumstances." The judge explained that he did not find plaintiff an unfit mother, rather, after his interview with the child and considering all the facts, he determined "the best interests of the child" required the change in custody and parenting time. The judge also included in the July 18 order a prohibition against "the parties post[ing] derogatory remarks on any social media platform about each other or regarding the minor child."

On August 10, 2022, plaintiff filed another motion to modify the existing custodial arrangements. The judge heard argument on the application on November 16, 2022. The judge described the motion as "really being the same

6

[as the] motion [for reconsideration] that was . . . heard previously." He noted plaintiff's "verbiage [wa]s the same with . . . additional language." Plaintiff described her motion as a request for a stay so she could appeal from the April 28, 2022 order. Therefore, the judge considered plaintiff's application as a request for a stay of the April 28 order, denied the request, and denied plaintiff's motion for reconsideration. He entered a conforming order on November 18, 2022.

On appeal, plaintiff argues:

> I. The trial court judge erred by changing custody to the defendant when there was no substantial change in circumstances.
>
> II. The trial judge erred by being more concerned with keeping his orders in place than the well-being of my child.
>
> III. The trial judge erred by not considering the evidence presented, even though the defendant showed to be a dangerous role model.

"We have a strictly limited standard of review from the fact-findings of [a] Family Part judge." N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 577-78 (App. Div. 2010) (citing Cesare v. Cesare, 154 N.J. 394, 411 (1998)). "The general rule is that findings by the [judge] are binding on appeal when supported by adequate, substantial, [and] credible evidence." Cesare, 154

N.J. at 411-12. We will only reverse if the judge's findings were "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice, and [we] . . . ponder[] whether, on the contrary, there is substantial evidence in support of the . . . judge's findings . . . ." Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974) (internal citations omitted). However, "[a judge's] interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." N.J. Div. Of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In custody cases, "the primary and overarching consideration is the best interest of the child." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). Our "Legislature [has found] and declare[d] that it is the public policy of this State to assure minor children of frequent and continuing contact with both parents . . . ." N.J.S.A. 9:2-4. In this pursuit, the statute requires that "[t]he [judge] shall order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of the child." N.J.S.A. 9:2-4(d) (emphasis added). The Legislature's intent is clear, the judge is mandated to sign the order when the parents agree to a custody arrangement unless the judge finds it is not

in the child's best interests.  See Harvey v. Bd. of Chosen Freeholders, 30 N.J.

381, 391 (App. Div. 1959) (the word "shall" is generally mandatory).

When "making an award of custody," courts must consider the following

factors under N.J.S.A. 9:2-4 in a "best interests" analysis:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.
>
> [N.J.S.A. 9:2-4.]

"The decision to deny a motion for reconsideration falls 'within the sound

discretion of the [judge], to be exercised in the interest of justice.'"  In re

Belleville Educ. Ass'n., 455 N.J. Super. 387, 405 (App. Div. 2018) (quoting

Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)).

9

Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either [(]1) the [judge] has expressed [his or her] decision based upon a palpably incorrect or irrational basis, or [(]2) it is obvious that the [judge] either did not consider, or failed to appreciate the significance of probative, competent evidence. Said another way, a litigant must initially demonstrate that the [judge] acted in an arbitrary, capricious, or unreasonable manner, before the [judge] should engage in the actual reconsideration process.

[D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).]

Here, the judge's denial of plaintiff's motion for reconsideration rests on three interrelated but separate findings: (1) the parties agreed to a custody arrangement on April 12, 2022, which was incorporated into the April 28, 2022 consent order; (2) the child's best interests were protected under the April 28, 2022 consent order; and (3) there were no changed circumstances between the filing of the April 28, 2022 consent order and the filing of plaintiff's motion in August 2022.

The judge did not abuse his discretion in denying plaintiff's motion for reconsideration of the parties' April 28, 2022 consent order. Indeed, the parties agreed to a revised custody arrangement in April 2022, and because the judge found the new custody arrangement was in the child's best interests, the judge satisfied his statutory obligation and effectuated the parties' custody and

parenting time decision with the entry of the April 28, 2022 consent order. N.J.S.A. 9:2-4(d).

In considering the appropriate statutory factors under N.J.S.A. 9:2-4 and determining the child's best interests were served by the April 28 consent order, the judge concluded the evidence established: (1) the parents agreed to the revised "custody arrangement"; (2) defendant was willing to accept custody of the child; (3) plaintiff and the parties' son had a strained "interaction and relationship"; (4) the child's "preference" to live with defendant;[1] (5) defendant's home was "safe and appropriate"; and (6) the child's ability to remain in the same school. Therefore, the judge's determination that the custody and parenting time arrangement outlined under the April 28, 2022 consent order was in the child's best interests is "support[ed] by adequate, substantial, [and] credible evidence." Cesare, 154 N.J. at 411-12.

We are also persuaded that the judge properly rejected plaintiff's argument that recent social media posts, the child's tardiness at school, and the fact defendant allowed a seventeen-year-old niece to accompany the child to the

---

[1] In determining the "preference of the child," N.J.S.A. 9:2-4(c), the judge, without objection, conducted an in-camera interview with the child. R. 5:8-6.

doctor, evidenced a substantial change in circumstances and demonstrated the April 28 consent order as not in the child's best interests.

"A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the child[]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "In custody modification cases, the burden is on the party seeking modification to show that, 'due to a substantial change in circumstances from the time that the current custody arrangement was established, the best interests of the child would be better served by a transfer in custody.'" Chen v. Heller, 334 N.J. Super. 361, 380 (App. Div. 2000) (quoting Voit v. Voit, 317 N.J. Super. 103, 121 (Ch. Div. 1998)). A prior custody order, "whether reached by consent or adjudication, embodies a best interests determination." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993). With that determination having been made in a prior custody order, a party seeking to modify the order "must bear the threshold burden of showing changed circumstances which would affect the welfare of the child[]." Ibid.

Guided by these principles, we are convinced the judge correctly determined plaintiff failed to satisfy her burden in showing circumstances had substantially changed between the entry of the April 28 consent order and the

filing of her reconsideration motion less than four months later to justify the transfer of primary residential custody back to plaintiff.

To the extent not addressed, plaintiff's remaining points lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13